# FIRST NATIONAL BANK OF BRINKLEY, ARKANSAS
## *v.* M. K. FREY and Eileen Patricia FREY

84-30                                       668 S.W.2d 533

Supreme Court of Arkansas
Opinion delivered April 30, 1984
[Rehearing denied June 4, 1984.]

*Elledge & Martin*, by: *Steven W. Elledge*, for appellant.

*Moore & Serio*, by: *Robert G. Serio*, for appellees.

STEELE HAYS, Justice. First National Bank of Brinkley has appealed from a judgment entered on a jury verdict against the bank and in favor of M. K. and Eileen Frey for the conversion of a certificate of deposit. On appeal we affirm the judgment.

Mr. and Mrs. Frey had several promissory notes with the bank and were stockholders of Bri-Ark, Inc., which was in default on several sizeable promissory notes due the bank. The bank sued Bri-Ark, Inc. and the Freys alleging the acts of the corporation were in reality the acts of the Freys. The corporate indebtedness was not disputed and judgment was entered on the pleadings against Bri-Ark, Inc. The Freys denied any individual liability on the Bri-Ark notes, or that any of their own notes were in default; they also counter-claimed, alleging that the bank had committed a conversion by wrongfully refusing to pay a $13,500 certificate of deposit at maturity. The jury awarded the Freys $491.74 for actual damages incurred by the bank's having withheld payment of the C.D. and interest, and $35,000 for punitive damages. On appeal, the bank asserts five points for reversal, but we find no error.

The bank first contends there was insufficient evidence to support a finding of conversion. When that point is argued, we view the evidence and all reasonable inferences to be drawn from it in a light favorable to the appellees. *Taylor*

v. *Terry*, 279 Ark. 97, 649 S.W.2d 392 (1983). There was no evidence that the Freys were liable for the debts of Bri-Ark, Inc., and the bank appears to have abandoned that claim in the lower court. The Freys owned several C.D.s from the bank, some of which were held by the bank as collateral for four demand notes which had matured at different times but had been extended. The disputed C.D. for $13,500 was not pledged; however, when Mr. Frey asked for payment the bank refused and the Freys incurred a loss of interest amounting to $421.88 by having to convert another C.D. before its due date.

Conversion is defined as "[a]ny distinct act of dominion wrongfully exerted over one's property in denial of his right, or inconsistent with it . . ." Cooley, Law of Torts, Fourth Edition, Vol. 2, § 33, p. 498, and as "the exercise of dominion over property in violation of the rights of the owner or the person entitled to possession." *Thomas* v. *Westbrook*, 206 Ark. 841, 177 S.W.2d 931 (1944). Conversion is an "intent to exercise a dominion or control over the goods which is inconsistent with the plaintiff's rights." Prosser, Law of Torts, Fourth Edition, § 15, p. 83.

The bank argues that it had a right to withhold payment of the C.D. and, hence, could not be guilty of conversion. The Frey notes had original due dates before January 6, 1982, when the C.D. matured, though each note had been extended to a date after January 6 and none was in a delinquent state when the C.D. matured. The bank does not argue on appeal that payment of these notes had been demanded, or default had occurred, but even if that were its position, that was disputed and the verdict resolved the issue, as the Freys offered proof that they had never received a demand for payment, that they had offered to pay the notes and had been told by bank officers to "leave the notes and just pay the interest."

No authority is cited to sustain the assertion that the bank was legally entitled to refuse payment of the C.D. when due. The proposition is tantamount to contending as a matter of law that a bank can refuse to honor a certificate of deposit and treat it as an offset against a promissory note of

the payee not then delinquent and we decline to make that holding without clear authority. By refusing payment, the bank wrongfully exerted dominion over the certificate of deposit and the trial court was correct in submitting the issue of conversion to the jury.

Nor do we agree with the second point for reversal. The bank alleges that the court erred in refusing to grant its motion for judgment notwithstanding the verdict. As the motion is not abstracted, we cannot determine the specific error charged. The bank argues that the measure of damages in conversion is ordinarily the market value of the property converted, whereas here the compensatory verdict was not the value of the C.D., but the amount of actual damages sustained by the Freys because of the conversion. The proof reflected that the Freys lost $491.77 in interest and out-of-pocket expense because of the bank's refusal to honor the C.D., and that was a reasonable measure of the damage. The amounts were exact and would not have been incurred had payment of the C.D. not been withheld. The market value of the property is not the only measure of the damages recoverable in conversion; the circumstances of the case may require a different standard, including expenses incurred. Cooley, Law of Torts, (Student's Edition), § 241, p. 484; 18 American jurisprudence 2d § 95, p. 218; and see *Van Meter Lumber Co.* v. *Alexander*, 214 Ark. 640, 217 S.W.2d 833 (1949).

Another argument of the bank is that it was error to permit the Freys' attorney to question a witness from a volume of banking regulations. Citing *Barrow* v. *Bolton*, 235 Ark. 595, 361 S.W.2d 91 (1962), the bank submits that it is improper to inform the jury of the law other than by the court's instruction. But we cannot determine whether reversible error occurred, as neither the brief nor the abstract tells us what was read to the jury, it may have been immaterial. Certainly, without knowing the content, we cannot say a substantial right was affected. See Unif. R. Evid. 103 (a).

The last two points relate to the punitive damages: 1) The Court Erred in Allowing Jury Instruction Number

14 Regarding the Award of Punitive Damages and 2) The Award of Punitive Damages Was Excessive. We are not able to consider the first argument, as the instruction and the objection are not abstracted and we have said frequently that we will not go to the single record to determine whether reversible error has occurred. *Routen* v. *Van Duyse,* 240 Ark. 825, 402 S.W.2d 411 (1966); *Tenbrook* v. *Daisy Mfg. Co.,* 238 Ark. 532, 383 S.W.2d 101 (1964). As to the argument of excessiveness, the jury heard the proof, which included the bank's financial statement, and considerable discretion is given to it in fixing punitive damages in an amount it deems appropriate to the circumstances. *Vogler* v. *O'Neal,* 226 Ark. 1007, 295 S.W.2d 629 (1956). The award in this case is substantial, but not so great as to indicate the jury may have been influenced by passion or prejudice. The penalty of punitive damages has a dual purpose — it must be an amount sufficient to deter the defendant from similar conduct and sufficient to discourage others from like conduct. *Ray Dodge, Inc.* v. *Moore,* 251 Ark. 1036, 479 S.W.2d 518 (1972); *Holmes* v. *Hollingsworth,* 234 Ark. 347, 352 S.W.2d 96 (1961).

Affirmed.