CAR TRANSPORTATION, Cliff Riggins, Don England and Shirley Faye Ann Henslin v. GARDEN SPOT DISTRIBUTORS, Better Foods Foundation, Inc. and California Natural Products

91-28                                                      805 S.W.2d 632

Supreme Court of Arkansas
Opinion delivered March 18, 1991

*Woodruff and Green*, by: *Ronald G. Woodruff*, for appellants.

*Davis, Cox, and Wright*, by: *Paul H. Taylor*, for appellees.

ROBERT L. BROWN, Justice. Appellants Car Transportation (a trucking business in Springdale, Arkansas), Cliff Riggins, Don England, and Shirley Faye Ann Henslin (collectively referred to as "motor carrier") appeal an order for partial summary judgment entered against the motor carrier for conversion of goods and in favor of appellees Garden Spot Distributors, Better Foods Foundation, Inc., and California Natural Products ("buyers"). The motor carrier further appeals an order denying reconsidera-

tion and an order for damages following a jury trial on that issue.

The facts involve multiple parties in multiple states. In November 1987 the buyers, doing business in California, New York, and Pennsylvania, contracted with De Sal Enterprises, Inc. (also called D & L Trucking), a California business, through its principals. Nick and Sandy Lisella ("sellers") for the purchase of food products. The motor carrier agreed to transport the goods and thereafter loaded them in California on November 20, 1987. While in transit to the east coast, the truck broke down in Arkansas, according to the motor carrier. At that time the motor carrier discovered that the sellers owed it money (approximately $9,000) for previous trucking services provided in 1983 and 1984. The motor carrier demanded payment of $15,000 from the sellers to repair the truck. After negotiations between the sellers and the motor carrier, the sellers refused payment, whereupon the motor carrier refused to deliver the goods to the buyers and stored them in its place of business in Springdale, Arkansas. Two of the buyers, Garden Spot Distributors and Better Foods Foundation, Inc., had paid the seller for the goods in advance. The third buyer, California Natural Products, had ordered the goods from the sellers for a customer on the east coast. When delivery was not made to that customer, the customer rescinded the contract.

The buyers argue that they demanded the goods from the motor carrier in Springdale. The buyers did not, however, tender payment to the motor carrier for the current freight charges. Nor did the motor carrier specifically demand payment of those charges from the buyers.

The buyers filed suit for conversion against the motor carrier and later filed a motion for partial summary judgment on the liability issue, which the trial court granted by an order entered on November 21, 1988, following a hearing. The motor carrier then filed a motion to set aside the court's order, which was denied by letter opinion on January 25, 1989, and by formal order on February 7, 1989. On March 30, 1990, after instructions by the trial court, the jury awarded total damages to the buyers of $20,340.30 plus interest and costs.

The motor carrier argues on appeal that summary judgment was inappropriate because certain material facts remained to be determined under ARCP Rule 56(c). The motor carrier further

argues that a proximate cause instruction should have been given to the jury prefatory to its deliberation on damages.

We do not agree, and we affirm the trial court on all points.

In support of its argument that material fact questions were left to be resolved, the motor carrier points to three unanswered factual issues: 1) who owned the goods while they were in transit; 2) was the motor carrier entitled to a lien on the goods for past or present freight charges; and 3) did the motor carrier intend to convert the goods.

■ Historically, summary judgment has been deemed an extreme remedy which is only granted when no issue of material fact remains for decision. *See Township Builders, Inc. v. Kraus Constr. Co.*, 286 Ark. 487, 696 S.W.2d 308 (1985). Moreover, when summary judgment is sought, all evidence presented in support of the motion must be viewed in the light most favorable to the non-moving party. *See Pinkston v. Lovell*, 296 Ark. 543, 759 S.W.2d 20 (1988). At the same time, Rule 56(c) clearly provides that when the pleadings and affidavits show there is no issue regarding any material fact, the movant is entitled to judgment as a matter of law.

The motor carrier vigorously argues that the trial court failed to decide ownership of the goods in transit, which was a material fact question pertinent to the ultimate disposition of this case. The specific factual dispute, according to the motor carrier, was whether ownership in the goods was transferred to the buyers immediately upon delivery to the motor carrier under a consignment theory or by virtue of the bills of lading, or whether ownership remained in the sellers until final delivery to the buyers in New York and Pennsylvania. The buyers asserted by affidavits that it was understood that title transferred to them upon delivery of the goods to the motor carrier. The motor carrier, on the other hand, countered that the sellers had informed it that title remained in the sellers until delivery to the buyers.

■■ The trial court made no determination of ownership, and we do not do so today, because ownership is not always an essential element in finding a common law conversion. We recently affirmed our long-standing definition of conversion as "the exercise of dominion over property in violation of the rights

of the owner or person entitled to possession." *City National Bank* v. *Goodwin*, 301 Ark. 182, 187, 783 S.W.2d 335, 337 (1990). Whether ownership rests in the sellers or buyers is not the critical factor, since the definition of those wronged by conversion also includes persons entitled to possession. It is undisputed that the motor carrier, irrespective of its dispute with the sellers, was withholding delivery of goods which ultimately belonged to the buyers. Accordingly, when the motor carrier withheld the goods from the buyers, it converted those goods as readily as if it had appropriated goods which clearly belonged to another. Because we hold again today that withholding goods from those entitled to possession constitutes conversion, it is not necessary for us to address the other issues relating to ownership which were raised by the motor carrier in its appeal.

The next question of fact arguably left unresolved by the trial court relates to the motor carrier's lien defense. Boiled down, the argument advanced is the motor carrier legitimately had the right to assert a lien against the goods shipped for a debt due a) from the sellers for past services; and b) from the buyers and sellers for current freight charges. Not only could it assert a lien under the motor carrier's theory, but it could enforce the lien by self-help, that is, by storing the goods in Arkansas until payment was made.

The motor carrier, however, did not plead a lien defense in its answer to the buyers' complaints. It is true that in answers to interrogatories the motor carrier made reference to a past debt owed by the sellers. But this falls far short of raising an affirmative defense. Furthermore, a lien on presently transported goods for a prior debt is not contemplated under the Uniform Commercial Code:

> (1) A carrier has a lien on the goods covered by a bill of lading *for charges subsequent to the date of its receipt of the goods* for storage or transportation (including demurrage and terminal charges) and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law.

Ark. Code Ann. § 4-7-307(1) (1987). [Emphasis ours.]

■ If a lien defense is available to the motor carrier, it can only be asserted against currently transported goods for current freight charges that remain unpaid. Again, there is a question of whether the motor carrier effectively raised such a lien defense. During the hearing on partial summary judgment, counsel for the motor carrier specifically stated that the motor carrier was not claiming a lien on the goods:

> The Court: Well, are you claiming a lien, you mean?
> Counsel: No, we're not claiming a lien, your Honor; we're claiming they [the goods] belong to somebody else. The guy we got them from told us they belonged to him.

It was only after the trial court had entered its order for partial summary judgment on November 21, 1988, that the motor carrier made the argument that it could withhold the goods for payment of freight charges. The argument was made in a brief which accompanied the motor carrier's Rule 60 motion to set aside the trial court's summary judgment order.

The trial court denied the motion to set aside by letter opinion on January 25, 1989. The motor carrier then filed a letter with brief attached on January 31, 1989, which fleshed out its lien defense theory in more detail. The trial court, however, entered its formal order denying the motion to set aside on February 7, 1989.

■ The trial court did not abuse its discretion in refusing to set aside the summary judgment order based on the lien theory advanced. It is clear that the motor carrier's dispute for payment of freight charges was with the sellers, not the buyers. A sudden assertion of a lien against the goods, midway en route, to resolve a dispute between the motor carrier and another party cannot justify converting property which has been purchased by the buyers. Prosser supports this conclusion in his discussion of withholding possession of goods in the conversion context:

> An unqualified refusal to surrender, stating no reason, or one stating the wrong reason, is still a conversion, even where there are unstated justifications. And if the defendant insists upon charges, or other conditions of delivery, which he has no right to impose, there is conversion.

*Prosser and Keaton On Torts*, § 15, p. 100 (5th Ed. 1984). Under these circumstances the motor carrier had no right to withhold

the goods from the buyer.

It is further clear that the time to claim payment is in advance of the shipment or upon delivery at point of destination. The motor carrier admits this in its argument and cites authority to support this principle. *See Wadley Southern Railway Co. v. Georgia,* 235 U.S. 651 (1915). Moreover, the federal code supports the premise that destination is the time when payment issues should be resolved:

> (a) Except as provided in subsection (b) of this section, a common carrier (except a pipeline or sleeping car carrier) providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under this subtitle shall give up possession at destination of property transported by it only when payment for the transportation or service is made.

49 U.S.C. § 10743(a) (1982).

Accordingly, with respect to the buyers no lien claim existed against the goods in mid-transit, and no fact issue relating to the buyers' action for conversion remained to be resolved.

There is finally the issue of wrongful intent to convert and whether failure to decide this issue is fatal to the summary judgment order. Again, we refer to *City National Bank* v. *Goodwin, supra.* There, we quoted from Prosser: "Conversion can only result from conduct intended to affect property. . . . The intent required is not conscious wrongdoing but rather an intent to exercise dominion or control over the goods that is in fact inconsistent with the plaintiff's rights." 301 Ark. at 187-188; 783 S.W.2d at 337-338.

Conscious wrongdoing is not the requisite intent for conversion, according to Prosser and the *Goodwin* case. What is required is the intent to exercise control or dominion over goods. In the *Goodwin* case, for example, we affirmed an award for damages where the bank did not wrongfully or maliciously convert a customer's bank account but mistakenly took funds from the wrong account. Similarly, in the present case the motor carrier took control over the goods in question and stored them at its Springdale business as security for payment of the freight charges. The intent to take control and withhold delivery is clear

and unmistakable. Whether the motor carrier specifically intended to convert the property of the buyers is simply not an issue.

The motor carrier also contests the failure of the trial court to give several instructions to the jury on proximate cause for damages. We find that the trial court properly excluded these instructions. The court said in its ruling, and we agree, that "damages naturally flow from a conversion." Stated a different way, proximate causation is not an element for the jury to find prior to awarding damages for conversion. Compensatory damages resulting from the conversion were appropriate for the jury to consider, as the trial court instructed.

Finding no abuse of discretion, we affirm.

Affirmed.