2011 Ark. App. 730

**Henry NICHOLS and Regions Bank, Trustees for Alpha Trust, Appellants**

v.

**CULOTCHES BAY NAVIGATION RIGHTS COMMITTEE, LLC, Appellee.**

No. CA 11–467.

Court of Appeals of Arkansas.

Nov. 30, 2011.

Stephen Neal Joiner and Richard Donovan, Little Rock, for appellant.

John H. Bell, McCroy, for appellee.

RITA W. GRUBER, Judge.

The issue presented in this case is whether Culotches Bay (hereinafter sometimes referred to as "the Bay") is naviga-

ble. The Prairie County Circuit Court found that it was. Appellants, Henry Nichols and Regions Bank—trustees for Alpha Trust (hereinafter, "Alpha Trust") which owns most of the land on both sides of Culotches Bay—contend that the circuit court's determination is clearly erroneous and should be reversed. We affirm the circuit court's order.

Culotches Bay is approximately 7.4 miles long and up to several hundred feet wide in the part that runs through Alpha Trust's land. The Bay drains into a narrow ditch, approximately 1.4 miles long, which then empties into the Cache River. The only public entry point is near the Cache River at the Broadwater Access. From there, one must take a boat up a narrow, shallow waterway, or ditch, to get to the Bay. The dispute about the Bay's navigability began in March 2007, when appellee, Culotches Bay Navigation Rights Committee, LLC, filed a petition for declaratory judgment against Alpha Trust. Appellee, whose members are residents of Prairie County, alleged that Culotches Bay was and had been a navigable stream for over one hundred years. Appellee claimed that Alpha Trust had posted signs where the Bay intersected its property declaring all waters beyond the signs to be the property of Alpha Trust. Disagreeing with Alpha Trust that the Bay was private property, appellee sought a declaration that Culotches Bay was navigable and thus public property.

We rendered a decision in this case in 2009 on Alpha Trust's appeal from the circuit court's order granting summary judgment, in which the court found that Culotches Bay was navigable and open to the public. *See Nichols v. Culotches Bay Navigation Rights Comm., L.L.C.,* 2009 Ark. App. 365, 309 S.W.3d 218. In that appeal, we reversed the part of the circuit court's order granting summary judgment

to appellee. On remand, the circuit court held a bench trial and found Culotches Bay navigable, and Alpha Trust filed this appeal.

To determine the navigability of a stream, the court must essentially decide whether the stream is public or private property. *State v. McIlroy,* 268 Ark. 227, 234, 595 S.W.2d 659, 663, *cert. denied,* 449 U.S. 843, 101 S.Ct. 124, 66 L.Ed.2d 51 (1980). This determination is a question of fact. *Ark. River Rights Comm. v. Echubby Lake Hunting Club,* 83 Ark.App. 276, 285, 126 S.W.3d 738, 743 (2003). For years in Arkansas, a water's navigability depended on its public commercial usefulness. *See Lutesville Sand & Gravel Co. v. McLaughlin,* 181 Ark. 574, 26 S.W.2d 892 (1930). Navigability was defined in *Lutesville Sand & Gravel Co.* as follows:

> The true criterion is the dictate of sound business common sense, and depends on the usefulness of the stream to the population of its banks, as a means of carrying off the products of their fields and forests, or bringing to them articles of merchandise. If in its natural state, without artificial improvements, it may be prudently relied upon and used for that purpose at some seasons of the year, recurring with tolerable regularity, then, in the American sense, it is navigable, although the annual time may not be very long.

*Lutesville Sand & Gravel Co.,* 181 Ark. at 576–77, 26 S.W.2d at 893 (quoting *Little Rock, Miss. River & Tex. R.R. Co. v. Brooks,* 39 Ark. 403 (1882)). But in *McIlroy,* the supreme court expanded the definition of navigability to include consideration of the water's recreational use as well as its commercial use. *McIlroy,* 268 Ark. at 237, 595 S.W.2d at 665. *McIlroy* concerned the navigability of the Mulberry River. After stating that the facts proved that the Mulberry River was capable of

recreational use and had been used "extensively for recreational purposes," the court held that the section of the Mulberry River at issue in the case "can be used for a substantial portion of the year for recreational purposes" and was therefore navigable. *Id.* In *McIlroy*, the evidence illustrated that, for about fifty to fifty-five miles of its length, the Mulberry River could be floated by canoe or flatbottomed boat for at least six months a year. The Ozark Society sponsored numerous float trips on the river; over twenty witnesses testified that they had either swum in or floated the river for years; Arkansas Game and Fish had published a pamphlet in 1978 touting the Mulberry as Arkansas's finest white water-float stream and as an excellent habitat for small-mouth bass; and the director of Arkansas State Parks and Tourism testified that he considered the Mulberry open to the public. Although the supreme court has since recognized that it extended the definition of navigable waters to those waters suited only for recreational purposes, *see State v. Hatchie Coon Hunting & Fishing Club, Inc.*, 372 Ark. 547, 556, 279 S.W.3d 56, 62 (2008), the court has not had the opportunity to further explain exactly how much recreational use is required to meet the threshold for navigability.

■ Alpha Trust argues on appeal that the evidence of recreational use in this case did not rise to the level of use found in *McIlroy*, and thus that the circuit court clearly erred in finding that Culotches Bay was navigable. To prove recreational use, appellee put on the testimony of five witnesses, each of whom testified that they had fished on Culotches Bay for years. Rayford Jenkins, who was eighty-six years old at the time of the trial, testified that he had fished on the Bay, sometimes daily depending upon the time of year, for twenty or twenty-five years; however, he said that he had not fished on Culotches Bay since 1975 because of arthritis.

Manuel Holcomb, sixty-eight years old at the time of trial, testified that he lived near Culotches Bay in the 1940s and 1950s and swam, boated, and fished in the Bay with friends "every chance [he] got." He said that he often saw people there, particularly on the weekends, and that a lot of people had trot lines on the Bay. He testified that he had a cabin near the Bay and that before he retired in 1979, he fished in the Bay about once a month. Since retirement, he said that he was there about three times a week and that he had always been able to get his boat into the Bay either by motor or by pulling it over the shallow part of the ditch. He said he had only pulled the boat "three or five" times out of "fifty or a hundred" times. He testified that he had seen others fishing every time he had fished in the Bay.

Billy Don Johnson testified that he was fifty years old and that he and his family had farmed the Brileys' land, which adjoins Culotches Bay, all of his life. He testified that he had not been on the Bay in twenty years but that he had been on the Bay probably twenty times when he was younger either fishing or duck hunting. He said that before Alpha Trust blocked access to the Bay, people were frequently in the Bay fishing.

Jesse Tackett testified that he had lived in the area for his entire sixty-eight years, that he had been familiar with Culotches Bay for as long as he could remember, and that he had fished on the Bay when he was younger. He also said he had been fishing on the Bay for over thirty years, that he used to fish ten or twelve times a year, and that he had not fished on the Bay much in the past two or three years. He testified that the fishing on the Bay was good and that he generally saw about eight or ten other people fishing on the weekends when

he was there. He said he accessed the Bay by using the boat landing on the Cache River and motoring through the shallow part of the Bay. Although he admitted that it would be hard to get into the Bay if the Cache River was below four feet, he said he had never had any problems getting to the Bay in his boat.

Kelly Sanner testified that he was forty-six years old and grew up fishing on the Bay. He said that he had been on Culotches Bay in each of his forty-six years and that he had accessed the Bay with permission of landowners on the Bay. He said that how many people fished the Bay depended upon how good the fishing was. He testified that sometimes, when the fishing was good, there were three or four boats, and sometimes there were five or six boats. Mr. Sanner testified that he had also used the Broadwater Access about fifty times over the past few years and that for about ten months a year a boat could get through to the Bay with no problem. He admitted that the water was shallow, there were logs in the waterway, and he had to be careful, but he testified that he had only turned his boat around twice in his life from the Broadwater Access because it was too shallow to get to the Bay.

Lance Nichols, a beneficiary of Alpha Trust and the manager of the farm owned by the Trust, testified that people did fish on Culotches Bay before Alpha Trust posted the signs on the property and admitted that it was often a good place to fish. He said that the Bay remained muddy much of the year, however, which made it hard to fish. He testified that a person could put a boat in at the Broadwater Access but that log jams would prevent the boat from being able to motor up to Culotches Bay unimpeded without raising the motor. He testified that for about forty percent of the

year, a boat could motor up the ditch from the Broadwater Access unimpeded.

Alpha Trust's witnesses also testified that they had fished on Culotches Bay. Walter Kendricks, who was employed by Alpha Trust to oversee and maintain the farm, testified that, about thirty to forty percent of the time, water levels were deep enough for a boat to motor from the Cache River to Culotches Bay. He said that when the water was high enough for a boat to motor up, he would see "at the most" four or five boats on the Bay. He also testified that he believed the Bay had "silted in" and was shallower than it used to be. He admitted that he had fished Culotches Bay for thirty years, long before he began working for Alpha Trust.

James Lowe, who takes care of the Briley Farm next to Alpha Trust's property on the Bay, testified that he went to the farm every day in the winter and three or four times each week in the summer. He said that, other than landowners, he would generally see a boat traveling the waterway from the Broadwater Access once or twice a year. He testified that the waterway from the Cache River was a little over a mile long and obstructed by trees and brush and that he did not consider it to be physically navigable by boat.

The circuit court heard all of the testimony and found that Culotches Bay was "regularly fished and hunted on for most of each year by a significant number of people and has been for over 60 years." The court also found that the continuing use of Culotches Bay by the public was in accord with the public policy of this state to encourage use of its water courses for useful and beneficial purposes. Accordingly, the court found that Culotches Bay was navigable.

Navigability, which is a question of fact, depends upon the usefulness of the waterway to the public. *McIlroy*, 268 Ark.

at 237, 595 S.W.2d at 665. Our standard of review on appeal from a bench trial is whether the trial judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *Carpenter v. Layne*, 2010 Ark. App. 364, 374 S.W.3d 871; Ark. R. Civ. P. 52(a). Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. *McQuillan v. Mercedes–Benz Credit Corp.*, 331 Ark. 242, 249, 961 S.W.2d 729, 733 (1998).

The supreme court held in *McIlroy* that use solely for recreational purposes was sufficient to establish navigability and recognized the following definition for navigability: "If in its natural state, without artificial improvements, it may be prudently relied upon and used for that purpose at some seasons of the year, recurring with tolerable regularity, then, in the American sense, it is navigable, although the annual time may not be very long." *McIlroy*, 268 Ark. at 235, 595 S.W.2d at 663 (quoting *Lutesville Sand & Gravel Co.*, 181 Ark. at 577, 26 S.W.2d at 893). In this case, we hold that the testimony supported the court's determination. If believed, and credibility is a matter for the fact-finder, the testimony established that members of the public regularly fished on Culotches Bay and had been doing so for over sixty years. Thus, we hold that the circuit court's finding that the Bay could prudently be relied upon with tolerable regularity to be used for recreational purposes is not clearly erroneous. Accordingly, we affirm the circuit court's order.

Affirmed.

VAUGHT, C.J., and PITTMAN, J., agree.