DAVID M. GLOVER, Judge
On October 31, 2018, in Commercial Fitness Concepts, LLC v. WGL, LLC , 2018 Ark. App. 522, --- S.W.3d ----, we reversed and dismissed the trial court's September 13, 2017 judgment. On November 13, 2018, WGL, LLC, filed a petition for rehearing, and Commercial Fitness Concepts, LLC, responded on November 19, 2018. We grant the petition for rehearing and issue the following substituted opinion.
The underlying facts of this case were set forth in Commercial Fitness Concepts, LLC v. WGL, LLC , 2017 Ark. App. 148, 516 S.W.3d 764, where we affirmed in part and reversed and remanded in part. Briefly, we affirmed the trial court's finding that Commercial Fitness was liable for the conversion of a computer-interface module/panel that controlled the heating and cooling equipment. We reversed and remanded, however, on the trial court's awards of damages: "We therefore reverse and remand the damages awards for the panel/module and for lost rents for the trial court to take further action in accordance with this decision." Id. at 11, 516 S.W.3d at 771. On remand, the trial court accepted the parties' stipulation that WGL "should recover damages in the amount of $2,888.46 for the fair-market value of the controller, the cost of replacement software, and the cost of installing the software and controller." Consequently, as stated in the September 13, 2017 judgment, *319 "[t]he only issue before the Court was the lost rents incurred by [WGL] which were proximately caused by the conversion of the controller." The trial court found WGL was "entitled to one-month's rent in the amount of $55,000 as special or consequential damages caused by the conversion of the controller." WGL filed a motion for reconsideration, and Commercial Fitness responded. The trial court denied the motion, explaining in part: "The award for lost rents is proper and consistent with the instructions, on remand, from the Arkansas Court of Appeals[,]" and "[t]he Court of Appeals remanded this case back to the trial court for proof of the Plaintiff's lost rent damages."[1]
In the instant appeal, Commercial Fitness raises three points: 1) the trial court erred as a matter of law in ruling that WGL could recover damages for loss of use of real property based on conversion of personal property; 2) the trial court's finding that WGL proved by a preponderance of the evidence that it was deprived of the use of its building is clearly erroneous; and 3) the trial court's finding that WGL proved by a preponderance of the evidence that Commercial Fitness's conversion proximately caused WGL not to collect rents for one month is erroneous and should be reversed. We reverse and vacate the portion of the September 13, 2017 judgment that awards $55,000 for lost rent, leaving intact the stipulated award of $2,888.46, and remand to the trial court with instructions to enter a new judgment in the stipulated amount of $2,888.46.
At the August 30, 2017 hearing on remand, WGL presented only two witnesses-Mike Charlton and Tim Salmonsen. Charlton testified that he had been the manager of WGL since 2006. He explained WGL was formed to build a custom-lease property for Rhett Garner. He testified WGL had a ten-year written lease with Garner, signed on November 14, 2006, and designated to cover the period 2008-2018; Garner declared bankruptcy; the bankruptcy trustee had possession during the bankruptcy; when WGL regained possession, the first problem was there was no air conditioning, and the building was not habitable in the summertime without air conditioning. Charlton testified there was no air conditioning in the facility because the computer and the interface between the computer and the sixteen HVAC units were missing. He explained he was in possession of the property for two months before the computer was replaced in August 2015. He further explained that "once he started the process, it did not take two months to replace the computer," but his discussions with Brandon Outlaw (who owned Commercial Fitness) about returning the computer "lasted a number of weeks." Charlton stated he could not rent the building without the air-conditioning systems because it was hard to get realtors to walk inside because it was so hot, and it was uninhabitable without the air conditioning. He said WGL sold the property in late November 2015. He described his own work experience and stated WGL was asking $55,000 a month to lease the building.
On cross-examination, Charlton said the last time WGL received rent for the property was when Garner made his last payment before filing for bankruptcy. Charlton described his efforts to learn if insurance covered the air-conditioning situation but reported he never received anything from insurance. He acknowledged responding to an interrogatory that *320 "when it became apparent to plaintiff that defendant's insurance company was not going to replace the BCMETH and BCMPWS, plaintiff borrowed the money to pay for the cost of replacing BCMETH and BCMPWS." He acknowledged WGL was not able to lease the property the day after the modules were in place; not able to lease it in September; and not able to do so in October. In fact, he acknowledged WGL was never able to lease the property; instead, the property was sold in November, explaining, "I couldn't find anyone to pay what I needed to rent the property." He then acknowledged the reason WGL did not collect any rent for May, June, July, and August was because its tenant had declared bankruptcy and moved out, and if the tenant had still been in the facility, the tenant would have been paying.
On redirect examination, Charlton stated he had to borrow the money to pay for the controller WGL purchased from Northwest Controls; it was inconceivable to rent the property during the months of May, June, and July 2015 without air conditioning; and WGL had someone interested in renting if the building had air conditioning, but when that person learned there was no air conditioning, the individual was no longer interested.
Tim Salmonsen also testified at the hearing on remand. He explained he was a commercial real-estate broker in Benton County and had been for eleven years. He said he was knowledgeable about commercial rental rates in Benton County, and he described the variety of factors that determine the fair-rental value of a commercial property. He stated he was familiar with the property in question, and his job was to find another tenant that could utilize the building.
Salmonsen was then asked if he had an opinion regarding the fair monthly rental value of the property from May to August 2015. Commercial Fitness objected to the testimony as irrelevant, but the trial court overruled the objection. Salmonsen then stated his opinion that the fair monthly rental value of the property was $56,000 a month. He further stated, "We had it listed for sale or lease, and we even had a couple of people ask about it, but we couldn't let a renter lease it because the air conditioner was not working at that time." He did not believe anyone would want to occupy a building with no air conditioning in the summer.
On cross-examination, Salmonsen acknowledged that renters or buyers often have demands or issues they want to address before closing a deal; he said he did not know whether a $6,000 issue would prevent a closing in a transaction involving a $50,000 a month rental payment or a $5 million purchase price. He acknowledged the air-conditioning system had been fixed in August, and he still did not lease or sell the property until the end of November.
For its first point of appeal, Commercial Fitness contends the trial court erred as a matter of law in ruling WGL could recover damages for loss of use of real property based on conversion of personal property. We are not willing to rule, as a matter of law, that consequential damages can never be established in a conversion case where the conversion of personal property causes loss-of-use damages concerning real property.
Our original opinion quoted at length from McQuillan v. Mercedes-Benz Credit Corp. , 331 Ark. 242, 961 S.W.2d 729 (1998), for the general proposition that the market value of the converted property is not the only measure of the damages recoverable in an action for conversion; the circumstances of the case may require a different *321 standard, including a measure of the expenses incurred as a result of the conversion. As will be discussed, infra , we find clear error in the trial court's finding that consequential damages were established in this case; however, we are not willing to hold that the trial court erred as a matter of law in allowing evidence of and considering the possibility of a measure of damages for conversion that was not limited to the fair-market value of the property converted, i.e. , that included the possibility of consequential damages.
For its second and third points of appeal, Commercial Fitness contends the trial court clearly erred in finding WGL proved it was deprived of the use of its building and Commercial Fitness's conversion proximately caused WGL to lose rent for one month. These points are intertwined, but because we have concluded the trial court clearly erred in finding the conversion proximately caused one month's loss of rent, it is not necessary to further discuss the deprivation-of-use issue.
As previously mentioned, our supreme court explained in the McQuillan case that the circumstances of a personal-property conversion case may require a different standard for damages, including a measure of the expenses incurred "as a result of" the conversion. Consequential damages in a personal-property conversion case would be an exception to the rule, and the "as a result of" language reasonably equates to proximate cause. Proximate cause is defined as that which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. TMC Cattle Co., Inc. v. Parker Commercial Spraying, LLC , 2018 Ark. App. 144, 540 S.W.3d 754.
Here, the building at issue was specifically built to house a huge gym. Charlton acknowledged at one point in his testimony it was Garner's bankruptcy that caused the loss of rent; Charlton testified he could not afford to fix the air-conditioning problem, which apparently would have cost about $6,000, but he also stated he waited for some time thinking Commercial Fitness would return the computer interface module/panel; and when the equipment was not returned, he borrowed the money to fix it. There was also testimony the air-conditioning system was fixed in August 2015, but the property still did not lease or sell until late November 2015.
While we have not ruled out the possibility for the recovery of consequential damages in a personal-property conversion case as a matter of law under McQuillan , we are left with a definite and firm conviction the trial court made a mistake in awarding damages for lost rent under the facts of this case. The evidence presented at the hearing on remand did not establish that the lost rent awarded by the trial court was proximately caused by the conversion of the computer-interface module/panel. We hold there was clear error in the trial court's finding that WGL lost rent for even one month "as a result of" the conversion. We therefore reverse and vacate that portion of the September 13, 2017 judgment awarding $55,000 for lost rent; leave intact the stipulated award of $2,888.46; and remand to the trial court with directions to enter a new judgment in the stipulated amount of $2,888.46 "for the fair-market value of the controller, the cost of replacement software, and the cost of installing the software and controller."
Reversed and vacated in part and remanded with instructions.
Gruber, C.J., and Virden, Gladwin, Vaught, and Murphy, JJ., agree.

To the extent the trial court interpreted our earlier opinion to hold it was required to award damages for lost rent and its only task on that issue was to determine the amount of lost rent, the trial court misinterpreted our opinion.