2012 Ark. 419

**BENEFIT BANK, Appellant**

v.

**Marilyn ROGERS, Appellee.**

No. 12–163.

Supreme Court of Arkansas.

Nov. 8, 2012.

Wright, Lindsey & Jennings LLP, Little Rock, by: Regina A. Young and Gary D. Marts, Jr., for appellant.

Meadors Law Firm, PLLC, by: Brian Meadors and Amanda Meadors, Fort Smith, for appellee.

PAUL E. DANIELSON, Justice.

Appellant Benefit Bank appeals from the Sebastian County Circuit Court's order finding that the mortgage it held to certain property was second and subordinate to the interest of appellee Marilyn Rogers

obtained in her divorce.[1] Benefit Bank originally appealed the circuit court's order to our court of appeals, which reversed and remanded the matter. *See Benefit Bank v. Rogers,* 2012 Ark. App. 134, 2012 WL 387864. Rogers petitioned for review, which this court granted. When we grant a petition for review, we consider the appeal as though it had originally been filed in this court. *See Orr v. Hudson,* 2010 Ark. 484, 374 S.W.3d 686. Benefit Bank asserts two points on appeal: (1) that the circuit court erred in finding that Rogers's interest was prior to its interest because the divorce court lacked authority to impose |₂a lien on real property to secure alimony payments, and (2) that the circuit court erred in finding that the lis pendens filed by Rogers created or perfected a lien. We affirm the circuit court's order.

The underlying facts are these. On November 30, 2007, a divorce decree was entered, pursuant to "the stipulated agreement of the parties," granting Marilyn Rogers a divorce from William Morgan. In the decree, Rogers was granted right, title, interest, and possession to a home located on Beverly Drive in Fort Smith, and William Morgan was granted right, title, interest, and possession to a home and twenty-seven acres located on Cook Terrace in South Sebastian County, "provided however, [Rogers] shall retain a lien, and a lis pendens shall be filed, as collateral security for [Morgan]'s obligations to [Rogers] hereunder." In addition, the decree awarded Rogers spousal support in the amount of $3600 per month for seven and one-half years, "provided, however, that [Rogers] shall retain a lien against the home and 27 acres on Cook Terrace in Sebastian County, Arkansas, as collateral

security for the continued payment of spousal support and an appropriate lis pendens or other such document shall be recorded to evidence said lien."

The record reflects that a notice of lis pendens was filed in the Sebastian County Circuit Court.[2] The notice stated that Rogers had begun an action against Morgan and referenced the docket number of the divorce proceedings. It further stated that a lien had been granted by Morgan in Rogers's favor upon the property now at issue and noted that, by |₃agreement of the signatories, which included Rogers; Morgan, individually; and Morgan, as authorized representative of W.C.M. Investments, LLC, the lis pendens "shall continue to be in effect" on the property in accordance with the terms of the divorce decree.

On July 16, 2010, Benefit Bank filed in the Sebastian County Circuit Court its complaint for foreclosure against Morgan and W.C.M. Investments, LLC. The complaint alleged that the action was to foreclose a mortgage on real property owned by W.C.M. Investments, of which Morgan was the owner and managing member. It further alleged that on or about May 19, 2008, for value received, W.C.M. Investments executed a note for $323,000 on the property at issue and that the mortgage was recorded on May 20, 2008. In addition, the complaint averred, Morgan executed and delivered a continuing guaranty, as additional collateral for the note, thereby unconditionally promising to pay all indebtedness of W.C.M. Investments. Alleging that W.C.M. Investments and Morgan had defaulted on their obligations, Benefit Bank asserted that it was entitled

---

1. The order also entered judgment in favor of Benefit Bank against then defendants W.C.M. Investments, LLC, and William Morgan, neither of which is a party to the instant appeal.

2. The notice was filed on November 13, 2007, after a hearing in the divorce court and before the decree of divorce was filed.

to foreclose its mortgage on the property and that its mortgage should be declared a first lien on the property.

Subsequently, Benefit Bank filed an amended complaint, in which it added Rogers as a defendant and asserted that Rogers may have, or claim to have, an interest in the property involved "by virtue of a Notice of Lis Pendens recorded November 13, 2007." Benefit Bank claimed that any interest of Rogers was secondary and subordinate to its first mortgage lien. Rogers answered, asserting that her lien/lis-pendens interest had priority over Benefit Bank's lien.[3]

Following a bench trial, held November 30, 2010, the circuit court entered its order on January 14, 2011, in which it concluded that a lien was established to Rogers's benefit by lawful order of the divorce court. The circuit court further found that the divorce court's order that a lis pendens be executed and filed was satisfied and that Benefit Bank was or should have been on notice of Rogers's interest in the property. Accordingly, the circuit court found for Rogers as to Benefit Bank's prayer that her interest be found second and subordinate to the mortgage held by Benefit Bank. It further found in favor of Rogers as to Benefit Bank's prayer that its mortgage be declared a first lien on the property and found W.C.M. Investments and Morgan in default, awarding Benefit Bank judgment for $308,676.55 along with late fees, costs, prejudgment interest, and additional prejudgment interest. Benefit Bank also moved for and was awarded attorney's fees. Benefit Bank now appeals.

For its first point on appeal, Benefit Bank asserts that the circuit court erred in finding that Rogers's interest in the subject property was superior to its mortgage interest because the divorce court lacked authority to impose a lien on real property to secure alimony payments. It avers that the long-standing rule in Arkansas has been that alimony cannot constitute a lien on a husband's land and that, accordingly, a divorce court cannot order a lien to secure alimony payments. Benefit Bank urges that where the alimony payments granted to Rogers were in the form of monthly payments rather than a fixed amount upon which execution might issue, the decree could not create a lien to secure alimony.

Rogers counters, asserting that divorce courts have every right to use marital property to secure alimony payments if it is done with the consent of the parties. She contends that the "no-security-for-alimony rule" applies only if it is imposed involuntarily. She further urges that a lien is not defeated merely because payments on the debt secured by the lien are made periodically.

In bench trials, the standard of review on appeal is whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. See McQuillan v. Mercedes–Benz Credit Corp., 331 Ark. 242, 961 S.W.2d 729 (1998); Ark. R. Civ. P. 52(a) (2012). We view the evidence in the light most favorable to the appellee, resolving all inferences in favor of the appellee. See McQuillan, 331 Ark. 242, 961 S.W.2d 729. Disputed facts and determinations of the credibility of witnesses are within the province of the factfinder. See id.

A review of this court's precedent does reveal that, as early as 1881, this court held that there was no lien on a husband's land for future alimony payments, and that by 1921, this concept was held to have

**3.** Rogers further asserted that she had a dower interest in the property that was superior

to other property transfers, including liens and mortgages.

become a rule of property. *See Warren v. Warren*, 273 Ark. 528, 537–A, 623 S.W.2d 813, 819 (1981) (supplemental opinion on denial of rehearing) (citing *Kurtz v. Kurtz*, 38 Ark. 119 (1881); *Whitmore v. Brown*, 147 Ark. 147, 227 S.W. 34 (1921)). As we noted in *Massengale v. Massengale*, 186 Ark. 917, 56 S.W.2d 763 (1933), "[t]his court has several times held that a decree or order for future payments of alimony does not constitute a lien upon real estate; that only sums ordered to be paid at once and for which execution may then issue constitute a lien upon lands as other judgments. The reason given for the rule denying liens for future alimony is that it would likely embarrass alienation." 186 Ark. at 919–20, 56 S.W.2d at 764 (internal citations omitted).

That being said, the instant record reflects no dispute that Rogers and Morgan agreed to the lien being imposed as part of the divorce decree. It was not unilaterally imposed against Morgan by the circuit court, which would have been in contravention of our case law set forth above. On the contrary, Morgan voluntarily agreed to the condition and subsequently signed the lis pendens, evidencing his agreement thereto, and we think that is an important distinction. Indeed, our precedent has at least suggested that where it is done so voluntarily, a lien imposed for the payment of alimony may not run afoul. In *Casteel v. Casteel*, 38 Ark. 477 (1882), this court, albeit dicta, observed,

> We need not modify the decree, as it is not urged upon us to do so. Otherwise it would be proper to remand the cause for its correction. The alimony should not have been made a lien upon the lands of complainant. This is equivalent to charging them with an annuity, *which the owner might do voluntarily,* but the court should not in invitum, as it embarrasses alienation. If objection had been made, or were now insisted

upon, the court might have secured the payment of the alimony by sequestration, or by exacting sureties. (See Gantt's Dig., Sec. 2205.) The appellant has, however, chosen to stand on other ground.

38 Ark. at 482 (emphasis added).

"In invitum" is defined as "[a]gainst an unwilling person." *Black's Law Dictionary* 854 (9th ed.2009). In this case, Morgan was not unwilling and in no way challenges the lien to which he agreed. Therefore, we cannot say that the divorce court lacked the authority to impose the lien as it did, when it was stipulated to by the divorcing parties.

Moreover, we cannot agree with Benefit Bank that because the award of alimony was in the form of monthly payments or a continuing general decree, no lien could be created. We have observed that

> a decree for future payments of permanent alimony [is not] a final decree upon which an execution might be issued or which might become a lien upon real estate. In order to collect on such a continuing general decree, it would be necessary to ascertain from time to time the amount of arrearages due in the payment of alimony and render a decree for the specific amount due.

*Jones v. Jones*, 204 Ark. 654, 656, 163 S.W.2d 528, 529 (1942). However, as already well established, the imposition of the lien in this case was done so pursuant to the stipulation of the divorcing parties. But, in addition, in this case, alimony was awarded to Rogers on a monthly basis to expire after seven and one-half years. We find no credence in Benefit Bank's argument regarding the nature of the payments.

For its second point on appeal, Benefit Bank argues that the lis pendens filed by Rogers did not create a lien. It

further contends that the lis pendens at issue was not actually a lis pendens because at the time of filing, "there was no complaint, action, or lawsuit filed against Morgan—or, more importantly, W.C.M. Investments—that challenged or affected the agreed lien." Finally, Benefit Bank claims, the lis pendens was of no effect because it was not acknowledged in accord with Arkansas Code Annotated §§ 16–47–101 to –110 (Repl.1999). Rogers responds that a lis pendens serves to put the world on notice that the title to or lien on real estate is subject to litigation. She urges that the lis pendens in the instant case provided such notice to Benefit Bank. She further asserts that there is no statutory requirement that a lis pendens be notarized.

Here, the circuit court found that Beneit Bank was correct in its assertion that a lis pendens was not a lien. Therefore, we turn to its next claim that the lis pendens was not a lis pendens because there was no pending litigation. The purpose of a lis pendens is to put bona fide purchasers or mortgagees on notice that the title to certain real or personal property is being litigated. *See Ashworth v. Hankins,* 241 Ark. 629, 408 S.W.2d 871 (1966) (citing 54 C.J.S. *Lis Pendens* § 1). We have held that the statutory effect of a lis pendens follows the litigation to its conclusion. *See id.*

A review of the instant record reveals that the lis pendens was filed of record on November 13, 2007. Rogers's and Morgan's divorce decree was not filed until November 30, 2007. Clearly, litigation relating to the subject property was pending at the time of the lis-pendens filing, and Benefit Bank was therefore on notice that the property at issue was being litigated in some fashion. Benefit Bank's argument is wholly without any merit.

Finally, Benefit Bank argues that the lis pendens was of no legal effect because it was not acknowledged in accord with Ark.Code Ann. §§ 16–47–101 to–110. Section 16–47–101 provides that

[a]ll deeds and other instruments in writing for the conveyance of any real estate, or by which any real estate may be affected in law or equity, shall be proven or duly acknowledged in conformity with the provisions of this act, before they or any of them shall be admitted to record.

The question then becomes: is a lis pendens an instrument in writing for the conveyance of any real estate or by which any real estate may be affected in law or equity, such that acknowledgment is required? Simply put, it is not.

First, a lis pendens is "[a] pending lawsuit" or "[a] notice, recorded in the chain of title to real property ... to warn all persons that certain property is the subject matter of litigation, and that any interests acquired during the pendency of the suit are subject to its outcome." *Black's Law Dictionary* 1015 (9th ed.2009). In other words, the lis pendens does not itself convey property, nor does it affect property. Instead, it simply "notifies potential purchasers that there is pending litigation that may affect their title to real property and that the purchaser will take subject to the judgment, without any additional substantive rights." 51 Am.Jur.2d *Lis Pendens* § 2 (2012) (internal footnotes omitted).

But too, Chapter 59 of Title 16 of the Arkansas Code governs lis pendens. *See* Ark.Code Ann. §§ 16–59–101 to –107 (Repl.2005). Section 16–59–101 states that to render the filing of any suit at law or in equity affecting the title or lien on real estate or personal property constructive notice to a bona fide purchaser or mortgagee of that property, "it shall be neces-

sary" for the plaintiff, his attorney, or his agent to "file a notice of the pendency of the suit, for record with the recorder of deeds of the county in which the property to be affected by the constructive notice is situated." It is further required that "[t]he notice of the pendency of the suit shall set forth the title of the cause and the general object thereof, together with a correct and full description of the property to be affected thereby, the names of the parties to the suit, and the style of the court where the suit is pending." Ark.Code Ann. § 16–59–102. Absent is any mention that an acknowledgment is required.

Because a lis pendens serves simply as a notice to others, and because the specific statutes governing the filing of a lis pendens do not require an acknowledgment, we cannot say that the circuit court erred in its finding that a lis pendens is not subject to the requirements of section 16–47–101.

For each of the foregoing reasons, we affirm the circuit court's order.

Affirmed; Court of Appeals' opinion vacated.