2013 Ark. App. 52

**James R. BOWEN and Richard J. Cagle, d/b/a B & C Shavings, Appellants**

v.

**Kendall GARDNER, Appellee.**

**No. CA 12–578.**

Court of Appeals of Arkansas.

Jan. 30, 2013.

William R. Mayo, Bentonville, for appellants.

Kutak Rock, LLP, Fayetteville, by: Michael R. Bond, for appellee.

PHILLIP T. WHITEAKER, Judge.

Appellants James Bowen and Richard Cagle, doing business as B & C Shavings (B & C), appeal from an order of the Washington County Circuit Court finding no valid contract existed between the parties and awarding damages for unjust enrichment. We affirm, although for different reasons than those set out by the circuit court.

In June 2009, Kendall Gardner approached B & C about purchasing a shavings mill to produce wood shavings for poultry processors. The parties agreed that B & C would build an eight-foot shaving mill for Gardner. On July 13, 2009, B & C faxed an invoice to Gardner reflecting a purchase price of $86,200, a thirty-percent down payment of $25,860, and a "balance due before shipment" of $60,340. Gardner sent a payment of $25,920, which included the bank's fees, via wire transfer to B & C on July 14, 2009.

In August 2009, Gardner discovered that the poultry plants with whom he had planned on doing business were no longer interested in purchasing wood shavings. Gardner called Cagle to inform him of the situation and to see if B & C could stop production of the machine.

On September 10, 2009, B & C wrote a letter to Gardner informing him that the shaving machine had been finished and that the balance of $60,340 was due. The letter further stated that Gardner had "ten days from this date . . . to pay the balance due or you will lose the down payment that you paid." Gardner spoke with Cagle several times on the phone that weekend and eventually responded with a letter dated September 14, 2009, in which he explained his financial circumstances and asked B & C to help him recover part of his down payment. B & C eventually sold the machine to another company for $86,500 in November 2009. B & C never returned any of Gardner's down payment to him.

Gardner filed a complaint seeking recovery of the down payment and raising claims of unjust enrichment, breach of contract, and statutory restitution pursuant to Arkansas Code Annotated section 4-2-718. B & C answered, contending that it had an express agreement for the purchase of the shaving machine and that the terms included the forfeiture of down payment.

The matter proceeded to bench trial in April 2012. Gardner testified that the only written agreement between him and B & C was the "quote sheet" B & C faxed to him. He also stated that he never had a discussion with B & C as to whether the down payment would be refunded if the sale were not completed. He testified that Cagle assured him that the machine would sell and, upon the sale, Gardner would get his money back. On cross-examination, Gardner admitted that his September 14, 2009 letter did not object to B & C's warning about losing his deposit; he asserted, however, that the letter from B & C was the first time he had heard about that term.

Richard Cagle testified that the eight-foot machine ordered by Gardner was unusual in the industry and was a special order. Cagle disputed Gardner's testimony concerning the down payment. He stated that he explained to Gardner that if the machine was not purchased after it was built, Gardner would lose his money. Cagle also testified that B & C was able to sell the machine after providing additional work to meet the new purchaser's specifications. James Bowen, the other partner in B & C, testified that B & C spent $10,406.67 in order to be able to sell the machine to another company.

At the conclusion of the trial, the circuit court found that the bid or quote that B & C faxed to Gardner did not constitute a contract. The court concluded that whether the down payment was refundable was an "incredibly material term and provision" that was omitted. The court stated as follows:

> So as a matter of law, I'm finding that no contract exists and that a material term was omitted, namely whether or not this down payment was refundable.
>
> Because we do not have a contract, Plaintiff's Complaint, with respect to Counts 1[ [1] ] and 3 fail and will be dismissed because there is no contract for which Plaintiff can recover for breach of contract.
>
> This clearly, in this court's view, violates the statute of frauds. It's well-known to counsel here that the law is long in explaining why we have the necessity of written contracts which contain sufficient terms that the parties know where they stand in entering into a contract like this. And in this court's view, you've violated the statute of frauds, and that's why we're here today.

Given the lack of a valid contract, the court went on to find that Gardner was entitled to recover on his theory of unjust enrichment. The court appeared to credit Gardner's testimony that he had conversations with Cagle concerning recovery of his down payment once the machine was sold. The court concluded that "the equitable thing here" would be for B & C to return Gardner's down payment to him, less the money that B & C spent making modifications to the machine so that it could be sold. The court therefore subtracted the $10,406 in modifications from the $25,860 down payment and concluded that Gardner was entitled to be awarded $15,454, plus postjudgment interest. The circuit court's judgment was entered on April 12, 2012. B & C filed a timely notice of appeal and raises two arguments for reversal: (1) the circuit court erred in finding that there was no valid contract, and (2) the circuit court erred in awarding damages to Gardner on a theory of unjust enrichment.

In bench trials, the standard of review on appeal is whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Benefit Bank v. Rogers*, 2012 Ark. 419, 424 S.W.3d 812; *McQuillan v. Mercedes–Benz Credit Corp.*, 331 Ark. 242, 961 S.W.2d 729 (1998); Ark. R. Civ. P. 52(a) (2012). We view the evidence in the light most favorable to the appellee, resolving all inferences in favor of the appellee. *Benefit Bank, supra.* Further, when there is testimony in conflict on the issue of whether the parties agreed to the terms of a contract, a factual question arises that is to be determined by the trial court. *Price v. Willbanks*, 2009 Ark. App. 849, 374 S.W.3d 28. Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. *Benefit Bank, supra.* A trial court's conclusions on questions of law, however, are reviewed de novo and given no deference on appeal. *Hall v. Bias*, 2011 Ark. App. 93, 381 S.W.3d 152.

The circuit court found no valid contract existed because there was "insufficient evidence of a writing sufficient to indicate that a contract for sale was made between the parties," citing Arkansas Code Annotated section 4–2–201(1) (Repl. 2001). That statute provides as follows:

> Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars ($500) or more is not enforceable by way

---

1. The breach of contract claim was actually raised in Count 2 of Gardner's complaint.

of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

■ We conclude that the court's ruling on this issue was partially correct. This was clearly a contract for the sale of goods for more than $500. The only writing concerning the contract for sale is the "quote" that B & C faxed to Gardner. The quote is signed by neither party. In that respect, then, the trial court correctly relied on the Uniform Commercial Code.

Subsection three of the same statute, however, states: "A contract which does not satisfy the requirements of subsection (1) *but which is valid in other respects* is enforceable ... (c) with respect to goods for which payment has been made and accepted or which have been received and accepted." Ark.Code Ann. § 4–2–201(3)(c) (Repl.2001) (emphasis added). Thus, we must determine whether the agreement between Gardner and B & C was "valid in other respects."

■ The essential elements of a contract include (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *DaimlerChrysler Corp. v. Smelser*, 375 Ark. 216, 218, 289 S.W.3d 466, 470 (2008). We have determined that all of the basic elements of a contract exist. There are competent parties, subject matter, consideration, agreement, and mutual obligation.

■ The appellate courts have repeatedly held that there are two legal principles when deciding the validity of a contract: (1) a court cannot make a contract for the parties but can only construe and enforce the contract that they have made, and if there is no meeting of the minds, there is no contract; and (2) in order to make a contract, there must be a meeting of the minds as to all terms, using objective indicators. *DaimlerChrysler Corp.*, 375 Ark. at 218–19, 289 S.W.3d at 470; *Grisanti v. Zanone*, 2010 Ark. App. 545, 336 S.W.3d 886. Both parties must manifest assent to the particular terms of the contract. *DaimlerChrysler*, 375 Ark. at 219, 289 S.W.3d at 470. Moreover, the terms of a contract cannot be so vague as to be unenforceable. *Id.* The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy. *Id.*

We conclude that there was a meeting of the minds as to the basic terms of the contract: Gardner agreed to buy a special-order shaving mill from B & C for $86,200, with a thirty-percent down payment. B & C agreed to deliver the product per the specifications of the order. The written quote did not contain a provision concerning the down-payment refund or forfeiture; however, this omission is not fatal. The terms of the contract agreed upon are reasonably certain to provide a basis for determining the existence of a breach and for giving an appropriate remedy. Accordingly, the circuit court erred in finding that no valid contract existed.

■ Having determined that a contract existed, we must also conclude that Gardner breached that contract. That is, he promised to purchase the shaving machine, and he did not do so. *See, e.g., Quality Optical of Jonesboro, Inc. v. Trusty Optical, L.L.C.*, 365 Ark. 106, 111, 225 S.W.3d 369, 373 (2006) (quoting *Black's Law Dictionary* 182 (7th ed.1999) as defining a

breach of contract as "a violation of a contractual obligation, either by failing to perform one's own promise or by interfering with another party's performance"). In the event of a breach of contract by the buyer, the Uniform Commercial Code sets out the available remedies for the seller:

Where the buyer wrongfully rejects or revokes acceptance of goods or fails to make a payment due on or before delivery or repudiates with respect to a part or the whole, then with respect to any goods directly affected and, if the breach is of the whole contract (§ 4–2–612), then also with respect to the whole undelivered balance, the aggrieved seller may:

. . . .

(d) resell and recover damages as hereafter provided (§ 4–2–706)[.]

Ark.Code Ann. § 4–2–703 (Repl.2001).

By selling the shaving machine to another buyer, B & C elected the remedy of resale pursuant to Arkansas Code Annotated section 4–2–706 (Repl.2001). That section sets out the means by which to calculate the seller's damages in the event of the buyer's breach:

Under the conditions stated in § 4–2–703 on seller's remedies, the seller may resell the goods concerned or the undelivered balance thereof. Where the resale is made in good faith and in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price together with any incidental damages allowed under the provisions of this chapter (§ 4–2–710), but less expenses saved in consequence of the buyer's breach.

Ark.Code Ann. § 4–2–706(1).

The use of the word "recover" in the statute implies that the seller has suffered some loss. Here, B & C was able to resell the shaving machine for $300 more than the contract price; for that reason, there is no difference between the resale price and the contract price for B & C to "recover." B & C was, however, entitled to its incidental damages. The circuit court found that B & C spent $10,406 in additional expenses to make the machine salable to another purchaser. This was the proper measure of B & C's damages. As B & C had already received $25,860 from Gardner in the form of Gardner's down payment, the trial court correctly concluded that Gardner was entitled to the return of his $15,454 ($25,860−$10,406=$15,454).

As has often been said, the appellate courts may affirm the trial court when it has reached the right result, even though it may have announced the wrong reason. *City of Marion v. City of West Memphis*, 2012 Ark. 384, 423 S.W.3d 594; *Buckeye Retirement Co., LLC. v. Walter*, 2012 Ark. App. 257, 404 S.W.3d 173. Because the circuit court reached the correct measure of damages, we affirm.

Affirmed.

GLOVER and VAUGHT, JJ., agree.