

# SUPREME COURT OF ARKANSAS
No. CV–13–135

| | |
|---|---|
| GULFCO OF LOUISIANA, INC. D/B/A TOWER LOAN OF SPRINGHILL, LOUISIANA<br><br>APPELLANT<br><br>V.<br><br><br>MACARTHUR BRANTLEY AND PAMELA BRANTLEY<br>APPELLEES | **Opinion Delivered** October 3, 2013<br><br>APPEAL FROM THE COLUMBIA COUNTY CIRCUIT COURT [NO. CV-11-111-6]<br><br>HONORABLE DAVID F. GUTHRIE, JUDGE<br><br><u>AFFIRMED</u>. |

**COURTNEY HUDSON GOODSON, Associate Justice**

Appellant Gulfco of Louisiana, Inc., d/b/a Tower Loan of Springhill, Louisiana (Gulfco), appeals the decision of the Columbia County Circuit Court denying its request to foreclose on the home of appellees Pamela and MacArthur Brantley. For reversal, Gulfco argues that the circuit court erred in applying Arkansas usury law to decline enforcement of the debt instruments that it contends are governed by the laws of the State of Louisiana. Gulfco also asserts that the circuit court erred in concluding that it was required to be licensed by the Arkansas Secretary of State and in ruling that the transactions were unconscionable and the product of predatory lending practices. We affirm the circuit court's decision.

The record reflects that Gulfco is in the business of extending high-risk loans to customers with poor credit ratings. It operates primarily in Louisiana, Mississippi, and Missouri. The Brantleys, who reside in Waldo, Arkansas, obtained four loans over a two-year

period from Gulfco at its location in Springhill, Louisiana, that is near the Arkansas-Louisiana border. First, on May 13, 2009, they borrowed $1,580.36 with an annual interest rate of 40.20 percent. After deductions for fees and insurance, the Brantleys received $1,031.63 in cash. Applying the stated interest rate, the finance charge amounted to $811.64, yielding a total indebtedness of $2,392, payable in twenty-six monthly installments of $92. The promissory note evidencing the debt stated that the loan was secured by "personal property."

On December 17, 2009, the Brantleys obtained another loan of $20,887.71 at an annual interest rate of 24.09 percent. Out of that sum, Gulfco satisfied the first loan and paid both a hospital bill owed by the Brantleys and their delinquent property taxes. After deducting those sums and $850 in fees, they received $17,388.32. With the finance charge of $18,784.29, the Brantleys were to pay a total of $39,672 over the course of seventy-two months at the rate of $551 per month. To secure the note for this loan, the Brantleys executed a mortgage on their home in Waldo. Gulfco appraised the value of the home at $32,000 with a quick-sale value of $27,000.

On June 2, 2010, Gulfco loaned the Brantleys an additional $2,779.82. On this loan, Gulfco charged an annual interest rate of 35.67 percent, and after deductions for fees and prepaid interest, the Brantleys received $2,501.83. Adding the finance charge of $1,250.18, the total debt amounted to $4,030 to be satisfied in twenty-six monthly installments of $155. This loan was secured by a list of personal property that included a riding lawn mower, a drill, a chainsaw, televisions, and cameras.

On March 11, 2011, the Brantleys borrowed an additional $3,345.34 with interest at

34.32 percent. Gulfco charged $400.72 in fees, and the proceeds were used to retire the June–2010 note. After these deductions, the Brantleys received cash in hand of $598.71. Including the finance charge of $1,464.66, they were obligated to pay $4,810 over twenty-six months at the rate of $185 per month. This note was secured by the same personal property as was the June–2010 loan.

The Brantleys made no payments on the loans after March 31, 2011. On July 1, 2011, Gulfco filed in the Circuit Court of Columbia County a pleading styled "Notice of Default and Intention to Sell," alleging that the mortgage on the Brantleys' home was in default and stating that a sale of the home would occur on August 19, 2011. Gulfco attached a copy of the mortgage to the notice of default. On July 14, 2011, Pamela Brantley filed a pro se answer that was followed by a response filed by the Brantleys' attorney. In the response, the Brantleys denied the substantive allegations of the notice of default, and they asserted the defenses of usury, unconscionability, estoppel, illegality, unclean hands, predatory lending practices, and a violation of the Arkansas Deceptive Trade Practices Act (ADTPA).

On August 11, 2011, the Brantleys filed a petition for a preliminary injunction to halt the proposed sale of their home. In the petition, they asserted that the promissory notes were unconscionable, as Gulfco took advantage of their lack of sophistication and induced them to mortgage their home with knowledge that they did not have stable, full-time employment. The Brantleys also alleged that the interest rates Gulfco charged were usurious under the Arkansas Constitution. Gulfco did not file a response to the petition. On August 12, 2011, the circuit court entered an order granting the Brantleys' request for a preliminary injunction.

SLIP OPINION

At the trial held on May 11, 2012, MacArthur Brantley testified that he worked part-time for a moving company. He said that he learned about Gulfco through a friend and that he and Pamela took out the first loan to pay personal bills that were about to become delinquent. MacArthur said that they fell behind on their payments of $92 per month because his work was slow and because Pamela had become ill. He stated that "Dee," Gulfco's loan agent, called him about their delinquency and suggested that they take out a second loan. MacArthur said that Dee already had the papers prepared when he arrived at the office. He stated that he did not read well and that he read what he could of the loan disclosure statement and promissory note. MacArthur testified that the money for the second loan was used to pay the first note and to buy a logging truck. He stated that he purchased the truck for $1,500 and spent $2,300 for welding in addition to buying tires and paying insurance. With regard to the June-2010 loan, MacArthur testified that the money was used to catch up the arrearages on the December-2009 loan. He said that they borrowed more money in March 2011 to again bring their loans current. MacArthur testified that they did not have the money to pay the loans and that they were faced with the choice of either accepting more loans or losing their home.

Pamela Brantley testified that she and MacArthur began construction of their home in 2000 and that they had built it a little at a time when money was available. Pamela said that she graduated from high school with a B average and that MacArthur had taken remedial classes in high school. Pamela stated that the county assessor had appraised the value of their home at $51,450. She said that she had heard from friends that Gulfco offered easy money



and that she and MacArthur sought a loan because they were behind on their household bills. She said that they told the loan agent, Demetrius Wilson, that she earned $120 per week sitting for an elderly woman and that MacArthur worked part-time for a moving company and sometimes mowed yards. She said she also advised Wilson of her medical problems. Pamela stated that Wilson knew that they had a home and about MacArthur's idea of obtaining a logging truck as a means to generate income. She testified that she advised Wilson that they were having a hard time making their payments on the first loan and that it was Wilson who suggested mortgaging their house and purchasing a logging truck. Pamela said that Wilson mentioned this idea many times in their conversations and that they finally agreed to another loan with a mortgage on their home. She testified that having the logging truck did not work out due to problems keeping the truck running, the high cost of gasoline, and a downturn in the logging business. Pamela said that they used the June-2010 loan to make a past-due payment on the previous loan and to pay household bills. She said that she was having medical problems at the time and could not work and that they "were going in circles" and getting deeper and deeper in a hole. Pamela stated that she did not read the loan documents because she and MacArthur were broke and in need of money.

Lori Spence, Gulfco's district manager, testified that between the first loan in May 2009 and the second one in December 2009, appellees were assessed three late charges and had missed two $92 monthly payments. She acknowledged that, when the June-2010 loan was made, appellees had missed the June payment. Spence stated that with the December-2009 and June-2010 loans, appellees were paying $551 a month on the note and mortgage

in addition to $155 per month on the June-2010 note. She said that they continued to miss payments and garner late charges. Introduced into evidence was a receipt appellees received dated February 18, 2011, stating that "[y]ou can obtain an additional $3043.48 from us, if you need it. Just ask the manager." Spence stated that they were one payment behind on the mortgage when the final loan was made in March 2011, and the loan proceeds were used to pay that arrearage. Further, she testified that Gulfco has several offices located near the Arkansas border.

After the conclusion of testimony, the circuit court took the case under advisement and asked for posthearing briefs, directing the Brantleys' attorney to submit his brief first and Gulfco's attorney to file his brief in response. In their brief, the Brantleys argued that the law of Arkansas applied and that the series of loans and conduct of Gulfco were unconscionable and unjust. In response, Gulfco maintained that the loans and mortgage were executed in good faith and in compliance with Arkansas law.

The court entered an order setting forth its decision on August 12, 2012. The circuit court described what it referred to as a "disturbing pattern of lending." The court found that Gulfco made four loans to the Brantleys despite their lack of stable employment. It said that it was no surprise that they were soon behind on their payments. The court noted that subsequent loans were used to bring the former loans current, and the court called attention to the receipt that indicated that even more money was available. The circuit court believed Pamela's testimony that Gulfco recommended the purchase of the logging truck and that the venture turned out to be one that they could not afford. It noted that with MacArthur's



income level and Pamela's illness, they could not break the cycle of debt. The court considered that the fees charged for the four loans was $2,322, and it deemed significant the fact that the charges were deducted from the loan proceeds on the front end, thereby reducing the amount of money available to the Brantleys and increasing the probability of further debt. It concerned the court that Gulfco referenced a quick-sale value of the home, as it indicated that a foreclosure sale might not be conducted in a commercially reasonable manner, which would result in a deficiency judgment against the Brantleys. In addition, the circuit court observed that Gulfco does business in three other states; that it was not licensed to do business in Arkansas; and that the interest rates would violate Arkansas usury law. In conclusion, the court found that "the loans collectively constitute predatory lending by a foreign corporation not authorized to do business in Arkansas and that the contract sought to be enforced is unconscionable and cannot be given full faith and credit. Accordingly, the contract will not be enforced against Arkansas property." Gulfco brings this appeal from the circuit court's order.[1]

As its first point on appeal, Gulfco argues that the law of Louisiana applies to the debt instruments and that the circuit court erred by employing Arkansas usury law to void the agreements. It points out that the promissory note that was secured by the mortgage contains a choice-of-law provision stating that the note is governed under the provisions of Louisiana

---

[1] Initially, the appeal was lodged in the court of appeals. We granted Gulfco's motion to transfer the appeal to this court under the provisions of Arkansas Supreme Court Rule 1–2(b)(4) & (5).

SLIP OPINION

law. Further, Gulfco maintains that it is a Louisiana corporation, that the agreements were executed in Louisiana, and that the Brantleys' payments were directed to Louisiana. It contends that, under these circumstances, the validity of the agreements must be judged under Louisiana law. In response, the Brantleys assert that Gulfco waived reliance on Louisiana law because it did not give notice of its intent to rely on foreign law as required by Rule 44.1 of the Arkansas Rules of Civil Procedure.

We summarily dispose of this argument. While the circuit court was indeed mindful that the loans would be usurious under Arkansas law,[2] the court did not decline to enforce the agreements based on a violation of Arkansas usury law. Instead, the court's ruling was that the debt instruments were not enforceable because they were unconscionable and the product of predatory lending practices. Inasmuch as the circuit court did not rule that the agreements were void because they violated Arkansas usury law, Gulfco's argument presents no basis for reversal.

Next, Gulfco contends that the circuit court erred in ruling that it was required to register with the Arkansas Secretary of State. We also summarily reject this argument because, again, Gulfco has misinterpreted the circuit court's decision. The circuit court did not find that Gulfco was required to be licensed in Arkansas. Nor did the court nullify the agreements because Gulfco is not registered to do business in the State of Arkansas. In its decision, the circuit court merely commented on the fact that Gulfco was an out-of-state business, a fact

---

[2] The Arkansas Constitution sets a cap on interest rates for consumer loans at seventeen percent. Ark. Const. art. 19, § 13(b).



that is undoubtedly true.  As with the first issue, Gulfco's argument on this point does not provide a basis on which to overturn the circuit court's decision.

We now turn to the final contention raised on appeal.  Gulfco takes issue with the circuit court's finding that it engaged in unconscionable and predatory lending practices.  It asserts that appellees signed the documents and were aware of the interest rates being charged; that they agreed to mortgage their home; and that they wished to engage in the logging business.  Gulfco argues that parties are bound by contractual provisions and may not assert ignorance of the document they have signed.  It contends that a court is not to rewrite a contract but must construe it as to reflect the parties' intent.  Further, Gulfco maintains that the Brantleys were not desperate or taken advantage of because it was they who sought out the first loan to help pay bills that were about to become delinquent.  Gulfco also points out that the Brantleys' credit was poor and that they did not seek a loan from any other lending institution.

In support of its argument, Gulfco cites only to Arkansas caselaw.  Therefore, we will apply the law of Arkansas in deciding this issue.  Our standards regarding unconscionability are as follows.  An act is unconscionable if it affronts the sense of justice, decency, and reasonableness. *Baptist Health v. Murphy*, 2010 Ark. 358, 373 S.W.3d 269. We have stated that in assessing whether a particular contractual provision is unconscionable, the courts review the totality of the circumstances surrounding the negotiation and execution of the contract. *Jordan v. Diamond Equip. & Supply Co.*, 362 Ark. 142, 207 S.W.3d 525 (2005). Two important considerations are whether there is a gross inequality of bargaining power

between the parties and whether the aggrieved party was made aware of and comprehended the provision in question. *Id.* We also observe that another factor which may contribute to a finding of unconscionability is a belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract. Restatement (Second) of Contracts § 208.

Arkansas's consumer-protection law, which is an expression of this State's public policy, is consistent with the Restatement. The Arkansas Home Loan Protection Act applies to high-cost home loans, which is a loan that is secured by a first lien on the structure that does not exceed $150,000, where the borrower is a natural person, and where the debt is incurred by the borrower primarily for personal, family, or household purposes. Ark. Code Ann. § 23-53-103(5)(A) (Repl. 2012). The Act prohibits practices such as lending without due regard to repayment ability. It provides,

> A creditor shall not make a high-cost home loan unless the creditor reasonably believes at the time the loan is consummated that one (1) or more of the obligors, when considered individually or collectively, will be able to make the scheduled payments to repay the obligation based upon a consideration of their current and expected income, current obligations, employment status, and other financial resources other than the borrower's equity in the dwelling that secures repayment of the loan.

Ark. Code Ann. § 23-53-104(l) (Repl. 2012). Any violation of the Act constitutes an unconscionable or deceptive act or practice under the ADTPA. Ark. Code Ann. § 23-53-106(a)(1) (Repl. 2012).

The determination of unconscionability is a mixed question of fact and law. *State ex rel. Bryant v. R & A Inv. Co.*, 336 Ark. 289, 985 S.W.2d 299 (1999). In bench trials, the

10

SLIP OPINION

standard of review on appeal is whether the circuit court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Benefit Bank v. Rogers*, 2012 Ark. 419, ___ S.W.3d ___. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Primus Auto. Fin. Servs., Inc. v. Wilburn*, 2013 Ark. 258, ___ S.W.3d ___. However, this court reviews questions of law de novo. *Campbell v. Asbury Auto., Inc.*, 2011 Ark. 157, 381 S.W.3d 21. Therefore, we review the circuit court's factual findings for clear error and its interpretation of the law de novo. *Robinson v. Villines*, 2009 Ark. 632, 362 S.W.3d 870.

Our review of the record confirms the circuit court's opinion of Gulfco's lending practices vis-a-vis the Brantleys. The Brantleys first obtained a modest loan from Gulfco to pay household bills that were about to become delinquent. They had difficulty making the $92 per month payments on this loan, as neither of them had full-time employment. Yet Gulfco, with knowledge of their employment status and Pamela's illness, loaned them approximately $20,000, taking a mortgage on the Brantleys' home as security. The proceeds of this loan were used to retire the unsecured first loan. The testimony also indicated that Gulfco's agent persuaded the Brantleys to mortgage their home. Thereafter, the Brantleys had trouble making the monthly payments of $551. Despite this fact, Gulfco extended more credit to them, and with this third loan, they were required to pay an extra $155 per month in addition to the $551 for the second loan. Predictably, the Brantleys could not meet these obligations. Nonetheless, Gulfco made yet another loan to them after advertising in a receipt

that more money was available. With this fourth loan, the third note was satisfied, and the Brantleys' monthly payments increased once again.

The evidence thus shows that the Brantleys were not capable of making their payments from the beginning. Subsequent loans were made to pay off previous notes or to bring their payments current. Despite the Brantley's demonstrated inability to pay, Gulfco continued to loan them money. Each loan, that included built-in fees and high interest rates, placed the Brantleys in a position of ever-increasing debt, such that it was all but inevitable that they would end up in default. While the Brantleys' debt situation became more dire with each loan, Gulfco's risk was minimal, because with the mortgage, it was assured of receiving full payment on the loan. Considering the totality of the circumstances, the circuit court found that the evidence revealed an intolerable pattern of reprehensible and unconscionable conduct on the part of Gulfco that offended its sense of decency and justice. We cannot conclude that the circuit court's findings of unconscionability and predatory lending practices are clearly erroneous. We hold that the court did not err in refusing to enforce the mortgage, as to do so would contravene the public policy of this State. Accordingly, we affirm its decision.

Affirmed.

HANNAH, C.J., concurs.

**JIM HANNAH, Chief Justice, concurring.** I concur with the majority's holding that the circuit court did not err in refusing to enforce the contract. I write separately because I reach that same conclusion on a different basis. As the facts cited by the majority clearly show, the contract at issue violates public policy in Arkansas with regard to usury, and the

predatory loan practices of Gulfco are against public interest. The courts hold the power to declare a contract void for contravening public policy or where it violates the interests of the public. *See Guar. Nat'l Ins. Co. v. Denver Roller, Inc.*, 313 Ark. 128, 854 S.W.2d 312 (1993); *Sirman v. Sloss Realty Co.*, 198 Ark. 534, 129 S.W.2d 602 (1939). In the present case, I would declare the contract void as against public policy and against public interest.

*John D. Lightfoot*; and *Robert S. Tschiemer*, for appellant.

*Claudell Woods*, for appellees.