Cite as 2019 Ark. App. 594

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-19-216

| | |
|---|---|
| MOOREFIELD CONSTRUCTION, INC. <br><br> APPELLANT <br><br> V. <br><br> R.L. HURST CONCRETE CONSTRUCTION, INC. A/K/A R.L. HURST <br><br> APPELLEE | **Opinion Delivered** December 11, 2019 <br><br> APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CV-14-884] <br><br> HONORABLE MARCIA R. HEARNSBERGER, JUDGE <br><br> AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Appellant Moorefield Construction, Inc., appeals the judgment entered against it and in favor of appellee R.L. Hurst Concrete Construction, Inc., a/k/a R.L. Hurst for $14,596.67. Hurst had filed a breach-of-contract complaint against Moorefield contending that Moorefield failed to pay the full contract price on the concrete parking-lot repair job that Hurst completed. The circuit court found, after a bench trial, that Hurst completed the contracted work, that a subsequently signed amendment to the contract that reduced the contract price was not supported by consideration, and that Hurst was granted judgment for the outstanding $14,596.67 plus court costs and a reasonable attorney's fee. Moorefield

contends that the circuit court's findings in the November 19, 2018 judgment are clearly erroneous.[1] We disagree and affirm.

In order to prove a breach-of-contract claim, one must prove "the existence of an agreement, breach of the agreement, and resulting damages." *Barnes v. Wagoner*, 2019 Ark. App. 174, 573 S.W.3d 594. There is no dispute that in May 2013, Moorefield and Hurst entered into a written contract for Hurst to repair paved areas on the exterior of a Wal-Mart store, specifically to address cracking in the concrete, for which Moorefield would pay $58,000. The "scope of work" was described as Hurst's completing "all barricade, removal of concrete, doweling of concrete and placement of concrete" in "strict accordance with the contract documents" and the photographs attached as exhibits to the contract. The contract required Hurst to complete "all work indicated or implied on the drawings." Hurst promptly started the job and finished it in mid-June. Moorefield had made substantial payments on the $58,000 contract price, and Moorefield was satisfied with Hurst's work, but thousands of dollars remained unpaid. Hurst sent Moorefield an invoice for the outstanding balance.

On or about July 1, 2013, Moorefield determined that not all the originally identified concrete needed to be removed and repaired, so it wanted to pay a proportionately lower contract price. Moorefield offered Hurst a $10,000 check as payment in full, which was $14,596.67 less than the original outstanding balance due. Hurst believed that all the work encompassed by the contract had been done. Moorefield, however, presented Hurst an

[1]The circuit court entered a separate order on November 28, 2018, awarding Hurst $5355 in attorney's fees and $165 in filing fees. Moorefield's notice of appeal designates only the November 19 judgment and does not mention the November 28 order.

2

"Amendment to Subcontract" that stated that the 9000 square feet of concrete work in the original contract was actually 6735 square feet, so based on a per-square-foot price, the contract price was now $43,403.33. This reduced the $58,000 original contract by $14,596.67. According to Mr. Hurst, he signed the amendment under duress that day because Hurst needed the $10,000 payment immediately to continue operating the business. Moorefield made no further payments.

In December 2014, Hurst filed the breach-of-contract action contending that it had satisfactorily completed the job pursuant to the original contract, that it was owed the full contract price, that the subsequent contract amendment was not supported by consideration but was instead entered into under duress, and that Moorefield breached the original contract by not paying what was owed. Moorefield answered the complaint with a general denial of all allegations. In its pretrial brief, Moorefield contended that "it was determined during the progress of this work that not all of the originally identified concrete would need to be removed and replaced" leading to the preparation of a "Change Order" to reduce the contract price based on the reduced scope of work Hurst was required to perform. Moorefield asserted that Hurst consented to and signed the "Change Order."

At the bench trial, Mr. Hurst testified that his initial bid on this concrete-repair job was about $80,000, which he lowered to $70,000, but the final agreed flat price was $58,000. Mr. Hurst explained that in making a bid on the job, there are "just many, many factors" to consider, such as the transportation necessitated by the sixty miles this job was from his place of business, the area of work to be done, and the equipment and people required to do the work. Hurst said that he completed the work exactly as the contract required, that

Wal-Mart and Moorefield accepted the work, and that there was no "by-the-square-foot-of-concrete" contract. Mr. Hurst said Moorefield owed approximately $24,000 after the job was completed, and he sent Moorefield an invoice in mid-June.

On July 1, 2013, according to Mr. Hurst, Moorefield (through its project manager, Josh Daves) offered Hurst a $10,000 check but only if Hurst agreed that this would be payment in full. According to Mr. Hurst, Daves required him to change his invoice, sign a lien waiver, and amend the contract in order to get the check. Mr. Hurst testified that he signed the amendment that day under duress, "absolutely had to have" the payment to keep his business going, and felt he had no choice. Mr. Hurst stated that Daves came up with the square-foot calculation, which was nowhere in the original contract. Mr. Hurst said there was no actual reduction in the work, though, because he was already finished with the job before the final invoice was sent to Moorefield.

Mr. Daves testified that Moorefield prepared and presented Hurst with the change order in July 2013. Mr. Daves testified that Hurst's work was acceptable but that a preliminary inspection showed that the scope of the concrete job was less than first anticipated. Daves did not dispute that the contract set a flat price and that the job was to replace damaged 20 x 20 foot concrete panels, which were described in the contract by a document from a structural-services company and accompanied by attached pictures. Daves explained that nineteen of the panels ended up not having to be replaced. Daves said that Hurst and the Wal-Mart representative were present on the walk to inspect the work, that Hurst saw which portions he would not have to finish, and Hurst did not appear surprised by the amendment. Daves stated that "at the start of this contract," he personally went out

4

with a survey crew to measure the square footage of concrete at issue, although he conceded that there was no mention of square footage or price per square foot in the original contract. Daves said he measured the reduced scope of the work and reduced the price accordingly. Daves did not remember exactly what was said when he got together with Hurst on July 1, but he did not believe that the $10,000 check was made contingent on Hurst's signing the amendment nor did he think Hurst had any objection to signing the amendment.

In rebuttal, Hurst testified he was not present for any walk-through with anyone from Wal-Mart and Moorefield, he was never given a list of deletions from the contract, in the end he did not have to replace everything described in the contract, but there was no adjustment or pro rata provision in the original contract. Hurst maintained that he did all the concrete work he was asked to do and finished the job before any reduction or change was demanded. Hurst also said that he did, in fact, object to Moorefield's demand to amend the contract in order to get the $10,000 check.

After taking the matter under advisement, the circuit court issued a judgment in favor of Hurst for the unpaid $14,596.67 due on the original contract. The order recited in pertinent part:

> 2. As plead[ed] in Plaintiff's complaint the parties entered into a valid contract for services and the Plaintiff provided satisfactory service and completed the contract.

> 3. The Defendant failed to pay to the Plaintiff the full price of the contract and when a partial payment was made, the Defendant withheld that payment and required the Plaintiff, in order to receive that payment, to sign an amendment to the contract which reduced the Defendant's financial obligation under the original contract, without consideration by the Defendant for the amendment.

4. The unpaid balance of the contractual obligation owed by the Defendant to the Plaintiff amounts to the sum of $14,596.67.

The circuit court's judgment also awarded Hurst "court costs" and "his reasonable attorney fees," which were determined with certainty in a subsequent order. Moorefield appeals the $14,596.67 judgment.

In civil bench trials, the standard of review on appeal is not whether there is substantial evidence to support the findings of the court but whether the court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Walter v. Chism*, 2018 Ark. App. 127, 543 S.W.3d 550. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been made. *Id.* Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. *Bohannon v. Robinson*, 2014 Ark. 458, 447 S.W.3d 585. We review questions of law de novo. *Miracle Kids Success Acad., Inc. v. Maurras*, 2019 Ark. 146, 573 S.W.3d 533.

Many of the facts in this case are undisputed, such as the wording of the original contract, but there is ample dispute surrounding the circumstances of the July 2013 meeting, the related documents, and the $10,000 payment. Moorefield argues that Hurst was not entitled to full payment because he did not do all the work contemplated in the original contract, there was an exchange of consideration for the amendment because Hurst was relieved of completing all the concrete work contemplated in the original contract, and Hurst failed to prove he was entitled to damages. Hurst responds that Hurst completed everything required by Moorefield in a satisfactory manner (a fact not in dispute), damages

6

were proved in the amount of the remaining balance due on the original contract, and the amendment forced on him was not supported by consideration.

The circuit court found, and the evidence supports its finding, that Hurst "completed the contract" before seeking payment for the remaining balance. Moorefield, consequently, was in breach of contract when it failed to pay the agreed contract price.

The dispute centers on whether there was consideration for the July 1, 2013 amendment. The amendment changed the terms of the original contract by reducing the price Moorefield was obligated to pay and added terms and definitions that were not in the original contract. It was for the circuit court to determine whose testimony was credible, to resolve any inconsistencies, and to decide what weight to give the evidence presented at this bench trial. We cannot say that the circuit court clearly erred in finding that Moorefield reduced its indebtedness to Hurst without providing any consideration for that reduction.

A contract to be enforceable must impose mutual obligations on both of the parties thereto. *Essential Accounting Sys., Inc. v. Dewberry*, 2013 Ark. App. 388, 428 S.W.3d 613. The contract is based on the mutual promises made by the parties; and if the promise made by either does not by its terms fix a real liability on one party, then such promise does not form a consideration for the promise of the other party. *Id.* Mutuality of contract means that an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound. *Id.*

Under Arkansas law, there must be additional consideration when the parties to a contract enter into an additional contract. *Youree v. Eshaghoff*, 99 Ark. App. 4, 256 S.W.3d

7

551 (2007). Although mutual promises may be adequate consideration to uphold a contract, the promise must have value to the party agreeing to the change. *Id.* If, without legal justification, one party to a contract breaks it, or threatens to break it, and to induce performance on his part the adversary party promises to give more than was originally agreed on, no consideration is given for the promise. *Id.*; *see also Worden v. Crow*, 2013 Ark. App. 234, 427 S.W.3d 143. These principles inform our review of the case on appeal.

Here, Moorefield acquired a nearly $15,000 discount on a contract that had already been fully and satisfactorily completed by Hurst according to the terms of the original contract. Moorefield provided nothing of value to Hurst in exchange for the substantial reduction in price. The circuit court found that this meant Moorefield provided Hurst no consideration for the price reduction. Giving due regard to the superior perspective of the circuit court in assessing the evidence, the testimony, and the weight to be given the evidence, we affirm the judgment because the findings are not clearly erroneous.

Affirmed.

GRUBER, C.J., and BROWN, J., agree.

*Gill Ragon Owen, P.A.*, by: *Roger H. Fitzgibbon, Jr.*, for appellant.

*Steve Westerfield*, for appellee.

8